IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CHRISTY CLINTON, | ] |
| Plaintiff, | ] |
| vs. | ] Case No: |
| TRI STAR SERVICES, LLC | ] JURY DEMAND |
| Defendant. | ] |

## COMPLAINT

Comes now the Plaintiff, Christy Clinton, by and through counsel and for cause of action will respectfully show to the Court as follows:

## JURISDICTION & VENUE

1. This action involves the application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq* and the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C.A. § 12101, *et seq*. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

2. The claims asserted in this action arose in or around Davidson County, Tennessee; therefore, proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE PREREQUISITE

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C.A. § 2000e. A Notice of Right to Sue was issued on August 2, 2019[1] and was received

---

[1] Although the Right to Sue is erroneously dated July 21, 2019, it was not issued and/or uploaded to the EEOC Public Portal until August 2, 2019.

by Plaintiff on August 8, 2019, a true and correct copy of which is attached hereto as Exhibit A. Further, Defendant is a domestic corporation that employees more than fifteen employees.

## PARTIES

4. Plaintiff, Christy Clinton (hereinafter referred to as "Plaintiff"), is an adult female individual and citizen of the United States who resides in Montgomery County, Clarksville, Tennessee.

5. At all relevant times, Plaintiff was an employee of Defendant Tri Star Services, LLC (hereinafter referred to as "Defendant"), within the meaning of the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)(A) and the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). 42 U.S.C. § 12111.

6. Defendant is a domestic limited liability company or similar business entity and regularly conducts business at its home office located at 1740 Ed Temple Blvd., Nashville, Tennessee 37208.

7. At all relevant times, Defendant engaged in commerce or in an industry or activity affecting commerce and employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year pursuant to 29 U.S.C. § 2611(4)(A) of the Family and Medical Leave Act (FMLA).

## FACTUAL ALLEGATIONS

8. Plaintiff was hired by Defendant as a Manager in Training ("MIT") on August 17, 2016.

9. Throughout her employment with Defendant, Plaintiff suffered from physical and mental impairments which substantially limited one or more major life activity and/or major bodily function.

10. At all times material, Defendant was aware of Plaintiff's physical and mental impairments.

11. On September 17, 2016, Plaintiff was promoted to General Manager ("GM").

12. Upon being promoted to GM, Plaintiff was transferred to the Hermitage Ave., Nashville, TN store.

13. Plaintiff remained in this role and at this store until June 5, 2017.

14. In late May 2017, Plaintiff took a medical leave from the company due to her physical impairment.

15. On or around June 5, 2017, Plaintiff was released by her physician to return to work with restrictions.

16. Plaintiff's physician recommended restrictions of not lifting more than 15 pounds repetitively and the ability to sit and rest, if needed, every three (3) hours.

17. Plaintiff provided Defendant with a copy of the doctor's note containing the restrictions.

18. Upon receiving the doctors note, Defendant failed to engage in the interactive process to determine whether Plaintiff could perform the essential functions of her job, with or without, a reasonable accommodation.

19. Upon Plaintiff's return from medical leave, her district manager, Steve Glidewell, informed her that her position had been filled.

20. As a result, Plaintiff was told she was being transferred to a different district with GM opportunities.

21. After the transfer, Plaintiff answered to district manager Kimberly Huffman.

22. Ms. Huffman was aware of Plaintiff's physical impairments and her work restrictions.

23. Plaintiff was initially assigned to the store located in Joelton, Tennessee

24. Shortly after the transfer, Plaintiff learned she had been demoted from GM to MIT.

25. Ms. Huffman told Plaintiff the demotion was only for two to three weeks.

26. Ms. Huffman told Plaintiff she planned to replace the GM of the Dickerson Pike store with Plaintiff as the GM.

27. Plaintiff remained an MIT at the Joelton store until August 23, 2017.

28. Throughout her three (3) months as MIT at the Joelton store, Plaintiff was regularly and routinely tasked with duties exceeding her doctor's work restrictions.

29. Ms. Huffman refused to allow Plaintiff to sit on a stool when necessary.

30. Ms. Huffman repeatedly required Plaintiff to lift objects heavier than 15 lbs.

31. Ms. Huffman required Plaintiff, and only Plaintiff, to scrub floors with a toothbrush on her hands and knees.

32. On August 23, 2017, Plaintiff was transferred to the Dickerson Pike store.

33. Contrary to Ms. Huffman's prior claim, Plaintiff was not restored to the GM position after the transfer to Dickerson Pike.

34. Rather, Plaintiff remained the MIT at Dickerson Pike answering to GM Donna Spence.

35. Defendant had prior knowledge Ms. Spence has a volatile temperament including verbally attacking employees and physical violence against employees.

36. Both Ms. Huffman and Ms. Spence knew Plaintiff suffered from post-traumatic stress disorder ("PTSD").

37. Both Ms. Huffman and Ms. Spence knew Plaintiff did not handle confrontation well as a result of her PTSD.

38. On Plaintiff's first day, Ms. Spence verbally attacked Plaintiff.

39. Upon notifying Ms. Huffman of the verbal attack, Ms. Huffman recommended Plaintiff confront Ms. Spence.

40. Both Ms. Huffman and Ms. Spence continued to assign Plaintiff work which exceeded her doctors work restrictions.

41. When Plaintiff complained about working outside her restrictions, Ms. Huffman and Ms. Spence denied any knowledge of Plaintiff's restrictions.

42. On September 15, 2017, Plaintiff contacted Defendant's Human Resources Manager, Keith Dotson, and requested a meeting with Mr. Dotson, Ms. Huffman and Ms. Spence to discuss and clarify Plaintiff's work restrictions.

43. That same day, Ms. Spence cornered Plaintiff in an office and verbally attacked her again.

44. Plaintiff immediately contacted Mr. Dotson to notify him of the hostile work environment Ms. Huffman and Ms. Spence were creating.

45. Due to working outside her work restrictions, Plaintiff suffered increased pain.

46. Due to the hostile work environment created by Ms. Huffman and Ms. Spence, Plaintiff suffered exacerbation of her PTSD symptoms.

47. On September 20, 2017, Plaintiff's physician took Plaintiff out of work due to exacerbation of her PTSD and pain from working outside her restrictions.

48. Plaintiff provided Defendant a doctor's note taking her out of work from September 20, 2017 through September 26, 2017.

49. Plaintiff was not offered leave under the Family Medical Leave Act for this leave request.

50. Ms. Huffman believed Plaintiff was out on FMLA leave.

51. Despite believing Plaintiff was on FMLA leave, Ms. Huffman filled Plaintiff's position while she was out on leave.

52. Ms. Huffman informed Plaintiff there were no positions available for her at that time.

53. As a result, Plaintiff was required to use her accrued paid time off while waiting for a position to become available.

54. On September 28, 2017, Plaintiff requested a transfer to another district.

55. Plaintiff informed Mr. Dotson she no longer felt safe working for Ms. Huffman or in Ms. Huffman's district.

56. Plaintiff was transferred back to Steve Glidewell's district in the Charlotte Avenue store.

57. At the time of the transfer, the GM for this store was on vacation.

58. During the GM's vacation, Plaintiff filled in as the GM.

59. Upon the GM's return, Plaintiff was sent to other stores within the district to cover other General Managers' vacations.

60. During this time Plaintiff was performing all GM duties despite not having the GM title or benefits.

61. In November 2017, the Charlotte Avenue store was robbed while Plaintiff was on duty.

62. The individual who robbed the store also took Plaintiff's wallet which contained her identification.

63. Knowing the individual had her identification and address, Plaintiff suffered extreme fear, anxiety, and exacerbation of her PTSD.

64. Plaintiff repeatedly requested assistance through Defendant's mental health counseling after the robbery.

65. Defendant refused to provide Plaintiff with mental health counseling.

66. As a result, Plaintiff was required to seek independent counseling and therapy.

67. Shortly thereafter, Mr. Glidewell attempted to transfer Plaintiff to the Hermitage Ave. store in which he knew the GM had previously threatened Plaintiff.

68. With the assistance of two other District Managers, Plaintiff was able to avoid transferring to the Hermitage Ave. store.

69. However, on December 4, 2017, Mr. Glidewell transferred Plaintiff to a store in Lebanon, two hours away from her home.

70. Plaintiff was told she would be the GM at this store.

71. Plaintiff was not reinstated to GM.

72. Plaintiff was not provided access to the necessary programs or resources to run this store.

73. Plaintiff was not provided proper staffing to run the store efficiently.

74. Plaintiff was frequently required to work double shifts to keep the store open.

75. On December 15, 2017, Plaintiff's began suffering from severe back pain during her shift requiring her to be admitted to the emergency room.

76. Upon notifying Mr. Glidewell of her injury, Mr. Glidewell told Plaintiff she needed to return to work.

77. Shortly after, Ms. Clinton learned she would require back surgery.

78. On December 23, 2017, Plaintiff requested FMLA leave beginning January 4, 2018 for her back surgery.

79. Upon learning this, Mr. Glidewell sent Plaintiff home and instructed her to start her leave early.

80. This resulted in Plaintiff unnecessarily using FMLA days in which she was ready and willing to work.

81. On January 4, 2018, Plaintiff learned her surgery would not occur because her employer sponsored insurance was no longer active.

82. Plaintiff notified Keith Dotson the surgery would be rescheduled due to the cancellation of her insurance.

83. Plaintiff attempted to return to work until her surgery but was denied.

84. Plaintiff attempted to return to work after her surgery.

85. Defendant refused to return Plaintiff's calls and emails.

86. Defendant terminated Plaintiff on June 16, 2018.

87. Plaintiff was demoted from GM back to MIT after her first medical leave of absence.

88. Plaintiff was clearly qualified to be a GM considering Defendant trained and promoted her to GM and used Plaintiff to fill in for other GMs on vacation.

89. Despite this, Plaintiff was never reinstated to GM.

90. Each time Plaintiff took a medical leave of absence and/or FMLA leave, Defendant filled her position, failing to reinstate Plaintiff.

91. Despite knowledge of her work restrictions, Defendant repeatedly required Plaintiff to work outside her restrictions.

92. Despite knowledge of Plaintiff's PTSD, Defendant intentionally placed Plaintiff in a hostile work environment.

93. Defendant failed to address Plaintiff's requests for help when her PTSD was exacerbated by the hostile work environment.

94. Defendant failed to engage in the interactive process with Plaintiff regarding her disability related accommodations.

95. Defendant failed to provide Plaintiff reasonable accommodations for her known disabilities.

96. Defendant discriminated against Plaintiff based on her known disabilities.

97. Defendant retaliated against Plaintiff because of her disabilities and requests for accommodations.

98. Defendant interfered with Plaintiff's rights and entitlements under the FMLA.

99. Upon learning of her back surgery and request for FMLA leave, Plaintiff was forced to start her leave early.

100. After submitting her FMLA documentation, Plaintiff was not permitted to return to work.

101. Defendant retaliated against Plaintiff after exercising her rights and entitlements to FMLA leave.

## COUNT I – VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT (INTERFERENCE AND RETALIATION)

102. Plaintiff re-alleges the foregoing paragraphs as though fully set forth herein.

103. Plaintiff alleges Defendant qualifies as an "employer" as defined in the FMLA, 29 U.S.C. § 2611(4) and employed over fifty (50) or more employees within a seventy-five (75) mile radius from the location in which the Plaintiff worked.

104. Plaintiff alleges she was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), as she had been employed continuously by Defendant for over a twelve-month period and worked at least 1,250 hours of service in the prior twelve month period.

105. Plaintiff alleges there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1).

106. Plaintiff alleges Defendant interfered with Plaintiff's attempt to exercise her right of entitlement to leave under the FMLA, pursuant to 29 U.S.C. § 2615(a).

107. Plaintiff alleges Defendant is responsible and liable under the FMLA, 29 U.S.C. § 2617(a).

108. Defendant, in terminating Plaintiff's employment for requesting FMLA, willfully violated the anti-interference provisions of the FMLA, 29 U.S.C. § 2615.

109. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## COUNT II- VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (DISABILITY DISCRIMINATION, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, FAILURE TO ACCOMMODATE, & RETALIATION)

110. Plaintiff hereby re-alleges the foregoing paragraphs as though fully set forth herein.

111. Plaintiff was a qualified individual with a disability and/or was perceived as an individual with a disability.

112. Plaintiff was disabled in that she had physical and mental impairments which substantially impaired one or more life activity and/or major bodily functions.

113. Defendant regarded Plaintiff as disabled by perceiving her as having an impairment, whether or not the impairment limits or is perceived to limit a major life activity.

114. Defendant discriminated against Plaintiff on the basis of her disability and/or perceived disability in violation of the ADAAA, 42 U.S.C. § 12112, *et seq*.

115. Plaintiff could perform the essential functions of her job with or without reasonable accommodation.

116. Defendant was aware of Plaintiff's disabilities.

117. Plaintiff made requests for reasonable accommodations that would not cause undue hardship to Defendant.

118. Defendant failed to engage in the interactive process.

119. Defendant failed to provide Plaintiff with a reasonable accommodation.

120. Defendant took adverse employment actions against Plaintiff because of her disabilities and/or perceived disabilities.

121. Defendant took adverse employment actions against Plaintiff in retaliation for her requests for reasonable accommodations.

122. Defendant took adverse employment actions against Plaintiff in retaliation for her complaints about disability discrimination and failure to accommodate.

123. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

124. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendant, for:

(1) all amounts of wages Plaintiff should have received under federal law but for Defendant's willful violation of her rights;

(2) liquidated damages pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A);

(3) the sum of money determined by the Jury to be sufficient to compensate her for the damages complained of herein;

(4) all punitive damages;

(5) all reasonable attorney's fees, costs and interest pursuant to state and federal law;

(6) any such other legal or equitable relief as may be appropriate or to which they may be entitled under federal law.

Respectfully Submitted,

**THE EMPLOYMENT & CONSUMER LAW GROUP**

**/s/ G. BRANDON HALL**
**JONATHAN A. STREET, BPR No. 021712**
**G. BRANDON HALL, BPR No. 034027**
525 4th Avenue South
Nashville, TN 37210
(615) 850-0632